COHEN v. TREMONT TRUST CO.

In re STERNBURG.

(District Court, D. Massachusetts. December 11, 1918.)

No. 820.

1. BANKRUPTCY ⊜⟹303(3)—PREFERENCE—EVIDENCE.
   Evidence that a bankrupt, whose sole bank account, which was kept with defendant trust company, had become inactive and merely nominal, had endeavored to secure large loans from the defendant, *held*, in connection with other facts, to establish that defendant had reasonable cause to believe the bankrupt insolvent when he paid two notes not yet due by a third party's check.

2. BANKRUPTCY ⊜⟹166(4)—PREFERENCE—EVIDENCE.
   Evidence merely that a bankrupt's account with defendant trust company had been inactive, and that he had requested larger loans, etc., *held* insufficient to show that defendant had reasonable cause to believe bankrupt insolvent when it received payment for two notes, one of which was not yet due.

Suit in equity by George I. Cohen, trustee in bankruptcy of Israel Sternburg, against the Tremont Trust Company. Decree for plaintiff for partial relief.

See, also, 249 Fed. 980.

Jacobs & Jacobs, of Boston, Mass., for plaintiff.
Asa P. French and Jonathan W. French, both of Boston, Mass., for defendant.

MORTON, District Judge. This is a suit in equity by the trustee of Israel Sternburg, a bankrupt, to recover certain payments made by Sternburg to the defendant, upon the ground that they were preferences. The case was heard in open court. The facts are as follows:

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The payments in question were two, each of $500, the first being made by Sternburg to the defendant on December 1, 1916, the second on December 14, 1916. The payment of December 1st was upon two notes held by the defendant for $250 each, one of which fell due on that date, and the other on December 8th. The payment of December 14th was also upon two notes of $250 each, one of which fell due December 15th, the other on December 22d. There is no doubt that at the time of making the payments Sternburg was deeply insolvent, and the only question is whether the defendant had reasonable cause to believe that to be the fact, and that the payments to it would result in preferences in its favor.

Sternburg had carried on a retail shop in Washington street, Boston, for many years preceding his failure. In the spring of 1916 he ceased doing his banking business at the Prudential Trust Company, and began to do business and to deposit with the defendant. He was given by it a borrowing credit not exceeding $1,000, of which he continuously availed himself, and he kept with the defendant his only bank account. After November 13, 1916, he ceased making deposits of receipts from his business, and thereafter made only one deposit, viz. $307, on December 1st. On that date he had a balance of $194.14, which, with the deposit, made $501.14, $500 of which was on that day paid to the defendant in payment of the first two notes above mentioned (due December 1st and December 8th). From that time until the failure Sternburg's balance was only $1.14. The payment to the defendant on December 14th (covering the notes due December 15th, and December 22d) was made with the check of a third party.

In the latter part of November Sternburg's shop was attached on mesne process, and the attachment continued a few days until it was dissolved by a bond on which Meyer Goldman and Rudnick appear as sureties. On or about December 7th another attachment was placed on the shop, which was also dissolved by a bond, with the same sureties, given on December 14th.

An involuntary petition was filed against Sternburg on December 19, 1916, on which adjudication was made July 8, 1917. The schedules showed liabilities of about $8,400; the only substantial assets consisted of the stock in trade and fixtures in the store. On February 15, 1917, the defendant loaned the bankrupt's wife $2,500 on a mortgage of the stock and fixtures in the store. This money was obtained for use in composition proceedings by Sternburg. Sternburg was a fraudulent bankrupt, who has been denied his discharge (see memorandum of decision in this court dated March 25, 1916), and his testimony given in this proceeding impressed me as being unreliable. He was obviously endeavoring to assist and protect the defendant, regardless of the truth.

The respondent's president, Mr. Simon Swig, testified that about the 1st of December Sternburg came to him and asked for a credit of $2,000—i. e., $1,000 more than he then had; that the witness refused to grant the request; that Sternburg thereupon said he would make other banking connections; that the witness did not keep run of the details of the deposit account himself, and that if he had done so, he

should have supposed from what it showed that Sternburg was carrying out his plan of liquidating his loans with the defendant, in order to be in a better position to open business with some other bank; that he himself knew nothing about the attachments on Sternburg's store, and supposed him to be all right; that advance payment of notes was not infrequent, and might well occur under such circumstances.

The case does not, however, turn on what Mr. Swig knew or believed, but upon what the defendant had reasonable cause to believe. It must be held to knowledge of such facts as were evident from its own books. At the time of Sternburg's talk with Mr. Swig, the defendant knew that Sternburg had for more than two weeks suspended all deposits; it knew that he made no assertion of having any other deposit account, or of having made arrangements with any other bank; it knew that he was asking for larger loans. At that time the first attachment on the bankrupt's shop had just been dissolved. Within a week after the first payment to the defendant, and before the second payment to it, the shop was again attached; and within three weeks the bankruptcy petition was filed. On the very day that the second attachment was dissolved by the bond given by the bankrupt and his brothers-in-law, the last two notes were paid to the respondent. At that time Sternburg's balance had for two weeks been $1.14, and the account had been inactive for over a month. He had no other bank account, and the defendant had no sufficient reason to suppose that he had any other. The check which paid the last two notes was not Sternburg's drawn on another bank, but, as above stated, a third person's. One of these notes was not due for a week. Subsequent to the failure, the respondents advanced $2,500 to the bankrupt's wife on arrangements made with him, and on a transaction of a somewhat unusual sort for a trust company, in order to assist the bankrupt in his effort at composition.

[1] It seems to me that the facts in the defendant's possession at the time of the second payment were amply sufficient to lead a careful man to the conclusion that Sternburg was insolvent and on the edge of failure. The defendant does not stand in any better position because knowledge of those facts was split up among several of its officers or agents, who did not exchange information.

[2] As to the first payment the case is close. The cessation of activity in the account, coupled with the request for larger loans was, it seems to me, under the circumstances, enough to excite inquiry, which, in turn, could hardly have failed to disclose that Sternburg's shop had been under an attachment. But the attachment had been dissolved, and the facts then open to the defendant would hardly be sufficient to warrant a finding of reasonable cause on its part to believe the debtor insolvent. The real question on this branch of the case is whether somebody connected with the defendant was not closely in touch with Sternburg's affairs, and arranging for payment of the notes in return for future assistance in composition proceedings. There may be ground for suspicion that this was so; but the evidence is not sufficient to justify such a finding.

256 F.—26

On all the evidence I find and rule that the plaintiff is not entitled to recover the payment of December 1st, and is entitled to recover the payment of $500 made on December 14th.

Decree accordingly.