**STATE FARM MUT. AUTOMOBILE INS. CO. v. HUGEE et al.**

No. 219.

District Court, E. D. South Carolina, Florence Division.

April 15, 1940.

Royall & Wright, of Florence, S. C., and Samuel Want, of Darlington, S. C. (Robert Moseley, of Greensboro, N. C., and McEachin & Townsend, of Florence, S. C., of counsel), for plaintiff.

W. Stokes Houck and W. Marshall Bridges, both of Florence, S. C., Mozingo & Bryan, of Darlington, S. C., Wm. H. Smith, of Florence, S. C., and John D. Nock, of Cheraw, S. C., for defendants.

LUMPKIN, District Judge.

State Farm Mutual Insurance Company seeks herein an adjudication under the Federal Declaratory Judgment Act, 28 U. S.C.A. § 400, against Patton's, Inc., and twelve injured bus passengers of its liability under its policy covering Patton's laundry truck, operated by Patton's driver McRae, while allegedly about business of his own at the time of a collision with a Greensboro-Fayetteville or Queen City bus driven by Stone, in which McRae was killed, his administrator and the bus companies and their driver having been added as parties defendant on motion of the insurer after several of the injured parties had served suits in the State Court or had answered. The policy here involved is the standard liability coverage including an agreement of the insurer to defend any actions, fraudulent or otherwise, for claims under the policy against the insured, and to pay any judgments against the insured within the policy provisions. The use of the truck is allegedly limited to "commercial" only; the insurer claims McRae, the driver, was engaged in a personal enterprise, although permissive, not within the coverage of the policy, at the time of the accident, and that Patton's had demanded that the insurer defend any claims made against it in connection with the collision.

The prayer of the amended complaint is:

"(1) That none of the defendants is entitled to recover from the plaintiff the amount of said policy or any part thereof.

"(2) That each of the defendants be restrained from instituting any action against the plaintiff for the recovery of the amount of said policy or any part thereof.

"(3) That if the Court shall determine that any of the defendants are entitled to a recovery against Patton's, Inc., in such manner or under such circumstances as to involve liability on the part of the plaintiff under the terms of its aforementioned policy, then in such event the defendants be required to interplead among themselves in this Court in the present cause for the purpose of determining the respective rights and liabilities of the parties to this cause.

"(4) That the plaintiff recover its costs, and for such other and further relief as may be requisite and proper in the premises."

The plaintiff has abandoned its request that the defendants be restrained from in-

stituting any action for recovery under the policy.

Several of the injured parties have answered, alleging in effect a general denial, lack of jurisdiction, absence of facts to constitute a cause of action and to show actual controversy, improper method of determination of liability, piecemeal trial, premature suit, and pendency of state actions involving identical and other issues. The plaintiff moved to strike most of these defenses.

At a pretrial conference Samuel Want, Esquire, one of the attorneys for the plaintiff insurance company, stated that he also represented Patton's, Inc., that Patton's, Inc., had filed no answer herein and was in default.

The insurer in its argument submitted after pretrial conference gives a comprehensive discussion of the history of the Federal Declaratory Judgment Act, 28 U. S.C.A. § 400, and insists that the decisions cited make it imperative that declaratory relief be granted in the instant case.

The insurer in the complaint claims, and is supported by Patton's in the claim, that McRae was permissively at the time of the accident using the truck for his own purposes, which purposes were not within the coverage of the policy. Patton's is sued to establish that claim. The clause of the policy under which the insurer seeks to prove nonliability is as follows:

"III. Definition of 'Insured'

"The unqualified word 'insured' wherever used in Coverages A and B and in other parts of this policy, when applicable to these coverages, includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is 'pleasure and business' or 'commercial', each as defined herein, and provided further that the actual use is with the permission of the named insured."

 Any use of Patton's truck by its agents is presumed until disproved to be not alone permissive, but its own use thereof. American Casualty Co. v. Windham, D.C.Ga., 26 F.Supp. 261; Preferred Acc. Ins. Co. v. Barker, 6 Cir., 104 F.2d 424. Without a statement of how and why McRae was acting about his own personal business, the allegation in the complaint to that effect is a mere legal conclusion.

 The insurer, having claimed, and Patton's, Inc., having acquiesced in the claim by its default, that the accident is not within the coverage of the policy, there is no controversy between Patton's Inc., and the insurer. Patton's, Inc., is depending upon the plaintiff's contentions in the instant action to free it of liability to the injured bus passengers, as the particular non-liability asserted by the plaintiff is not, as in most instances cited, one only between the insurer and the insured. If it can be proved that McRae was not acting about the business of nor within the scope of his agency for the defendant Patton's, Inc., then the claims of the injured bus passengers against Patton's, Inc., fall. If the relief prayed for here was granted it would defeat the right of the several injured passengers to a trial of their actions against Patton's, Inc., in the State Court.

Plaintiff's counsel claim that the failure of the administrator of the estate of McRae to answer in the instant action proves collusion as between the administrator and the injured passengers. The fallacy of this argument is immediately apparent. The administrator of the estate of McRae was added by amendment as a party to the instant action at the specific instance and request of the plaintiff. In the actions in tort in the State Court against the administrator of the estate of McRae, Patton's, Inc., and others, the administrator has answered and set up a cross-action against the bus companies. The injured passengers have no contractual relation with McRae or the administrator of his estate, nor do the same counsel represent them. There is between the plaintiff and Patton's, Inc., a close contractual relationship; the same counsel represent them; Patton's, Inc., can furnish the insurer the evidence calculated to free both of liability to the injured passengers. The insured Patton's, Inc., being in default leaves the case without that actual controversy necessary to the maintenance of an action under the Declaratory Judgment Act. Danahy Packing Co. v. McGowan, D.C.N. Y., 11 F.Supp. 920.

The cases upon which the plaintiff depends show a demand for payment or defense by the insured upon or by the insurer and a question of coverage which could not bar the actions of the injured parties against the insured if adjudicated favorably to the insurer.

In United States F. & G. Co. v. Pierson, 8 Cir., 97 F.2d 560, the assured demanded that the plaintiff-insurer defend him against the claims of the injured party; the question of coverage was one not arising in the State action by the injured party, the adjudication of which in a declaratory action in Federal Court would not affect the claim of the injured parties against the insured.

In Myers v. Ocean Accident A. & G. Corp., 4 Cir., 99 F.2d 485, the insured demanded defense; the coverage involved was transportation of persons for a consideration, excluded under the policy.

In Maryland Cas. Co. v. Hubbard, D.C. Cal., 22 F.Supp. 697, 698, the Court says: "The defense of the accident has been tendered to the defendant-insurer, but it has refused to take it, denying liability. The controversy arises from this refusal, and denial of liability and the contention of the plaintiff that the defendant-insurer's policy is primary coverage and the plaintiff's is merely excess coverage, after the liability of the defendant-insurer's policy has been exhausted."

In Maryland Cas. Co. v. Consumers Finance Service, 3 Cir., 101 F.2d 514, the facts, although incompletely stated, indicate that the question of coverage had no bearing upon the liability of the insured to the injured party.

In Associated Indemnity Corp. v. Manning, 9 Cir., 92 F.2d 168; Id., 9 Cir., 107 F.2d 362, the injured persons demanded damages of the insured. The insured made demand on the insurer to defend the threatened suits and pay the judgments obtained, if any. The point with regard to the coverage of the policy was an excluded use of the truck.

In Carnes & Co. v. Employers' Liab. Assur. Corp., 5 Cir., 101 F.2d 739, there is no evidence of action in the State Court having been brought by any of the injured parties defendant, but the question of coverage involved, that is, the kind of gas hauled by the insured's truck, could not affect the liability of the insured to the injured parties.

In Central Surety & Ins. Corp. v. Caswell, 5 Cir., 91 F.2d 607, the insured admitted liability and called on the plaintiff-insurer to pay the claims of four passengers riding allegedly gratuitously in her insured car when injured by her negligent driving. The insurer, after paying one claim, learned that the injured parties were paying passengers. The situation was patently one in which the Declaratory Judgment Act was applicable; the fact that the injured parties were paying passengers and therefore not within the coverage of the policy would not defeat their claims against the insured.

In Western Cas. & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166, the injured party recovered judgment against the driver of the insured automobile before suit for a declaration was sought.

In American Motorists Ins. Co. v. Busch, D.C.Cal., 22 F.Supp. 72, the asserted nonliability was failure of the insured to give written notice of the accident. See, also, general discussion in Annotation 125 A.L.R. 285.

In the situation here involved the question raised by the insurer with regard to coverage, that is, McRae's agency for Patton's Inc., is a major issue—in fact, the very essence—of the actions of the injured parties against Patton's, Inc., in the State Court. The insured, Patton's, Inc., by indirectly joining with the insurer in a suit under the Declaratory Judgment Act endeavors to defeat the claims of the injured parties or to prejudice their orderly trial. The question before the Court is not one between the insurer and the insured only, but one decisive of the liability of the insured to the injured parties in their actions in the State Court.

■ Counsel for the plaintiff, citing Circuit Court authority, state that a contest between the insurer and the insured is immaterial, that the interests of the injured parties in the insurer's policy is as direct as that of the insured itself. The contract does not so read, and it should not be the function of the courts to make contracts for the parties for the purpose of securing Federal jurisdiction. The only reasonable basis for the institution of suit under the Federal Declaratory Judgment Act is an actual contest between the insurer and the insured. If the indications are, as in the instant case, that such a contest will embarrass the injured parties in the prosecution of their claims against the insured in the State Court, then the action should be dismissed, particularly where actions on the part of the injured parties against all the tortfeasors jointly are pending in the State Court.

■ The plaintiff also claims that suit under the Declaratory Judgment Act is

maintainable by the insurer against such group of persons as it may select for the purpose of obtaining a declaration of its status in respect to the claims of such persons—the only basis of such an action is the policy coverage, and to such action the insured is the only indispensable party. If the insured joins with the insurer in an effort to defeat the claims of the injured parties, as indicated by its default, the Declaratory Judgment Act is inapplicable.

█ In many District and Circuit Court decisions it has been held that the jurisdictional amount is involved in suits of this sort because the whole coverage of the policy may be in question. An effort on the part of an insurer to secure an adjudication that it is not liable in a given case under its policy because of a question of coverage does not go to the life of the policy itself, but only to the amount of specific judgments obtained. The decision that the jurisdictional amount is involved in Ætna Casualty & Surety Company v. Yeatts, 4 Cir., 99 F.2d 665, is based on an analogy between a suit for cancelation of a policy of life or disability insurance involving the whole coverage and a liability policy covering possible judgments up to a certain amount. All that can be recovered from the surety company is the amount of a judgment or judgments, a definitely ascertainable sum. The decisions in United States F. & G. Co. v. Pierson, 8 Cir., 97 F.2d 560, and Carnes & Co. v. Employers' Liability Assur. Corp., 5 Cir., 101 F.2d 739, follow the same reasoning as the Yeatts case, supra. The policy obligation to indemnify the assured against liability is specifically fixed at the exact amount required to defend plus any judgments obtained by the injured parties against the insured. Federal jurisdiction should not be predicated upon a possibility that the whole coverage of the policy will be obtained by judgment—this is stretching the reasonable application of the jurisdictional amount.

In American Auto Ins. Co. v. Freundt, 7 Cir., 103 F.2d 613, 619, the court states that the report of the Senate Judiciary Committee on the Declaratory Judgment Act proves the intention that the District Court should "enjoy a measure of discretion in the matter of granting or withholding declaratory relief."

Again, in Maryland Cas. Co. v. Tindall, D.C.Mo., 30 F.Supp. 949, the allowance of declaratory relief is held to be within the sound discretion of the Court.

"The granting of the remedy of a declaratory judgment is nevertheless discretionary with the court and it may be refused if it will not finally settle the rights of the parties or if it is being sought merely to determine issues involved in cases already pending." Maryland Cas. Co. v. Consumers Finance Service, 3 Cir., 101 F.2d 514, 515.

"An obvious and principal reason for the exercise of such discretion is found in the existence of a suit whose determination in another court will ultimately decide the liability of the party petitioning for a declaration. If the petition for a declaration is filed after the commencement of such suit, it should be dismissed. 16 American Jurisprudence, sec. 14. If, however, the order of filing is reversed, we have a close question." United States F. & G. Co. v. Koch, 3 Cir., 102 F.2d 288, 294.

█ The matter of the discretion of the District Court is admirably summed up in Aetna Cas. Co. v. Quarles, 4 Cir., 92 F.2d 321, 325:

"The statute providing for declaratory judgments meets a real need and should be liberally construed to accomplish the purpose intended, i. e., to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships. Whether the remedy shall be accorded one who petitions for it is a matter resting in the sound discretion of the trial court, to be reasonably exercised in furtherance of the purposes of the statute. It should not be accorded, however, to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted. As was well said by Professor Borchard (Declaratory Judgments 107-109):

"'The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results .

can be accomplished, the court should decline to render the declaration prayed. In addition, and perhaps, as indicating when a useful purpose will not be served, statute and practice have established the rule that the judgment may be refused when it is "not necessary or proper at the time under all the circumstances." * * * The court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither necessary nor proper to issue the declaration.' "

 The within action is not necessary or proper at the present time in all the circumstances. Several of the actions in the State Court were brought almost contemporaneously with the instant action. The issue involved in the instant action is vital to the State actions as against Patton's, Inc. Its adjudication in the instant action will bar the claims of the injured parties against Patton's, Inc.; the injured parties are entitled to a trial of that issue in their actions in the State Court; exercise of discretion in refusing declaratory relief leaves the insurer in full possession of all its rights. The contract would be more exactly enforced and the interests of all parties would be best served by prosecuting the actions in the State Court.

A primary requisite is that the parties shall not be required to try their rights piecemeal but a full and complete determination of all issues be accomplished. How could a determination of all issues be accomplished in the present action?

To entertain jurisdiction would mean then the trial of all issues of fact relative to the liability of the bus companies, the bus driver, the truck driver, and Patton's, Inc., to the injured defendants, together with the accompanying questions of the extent of injury to each. How would the Court approach this tremendous task? Twelve people with different injuries, different doctors, it is assumed, and different lawyers. Testimony would be prolix, cross-examination and argument of counsel interminable. Only the question upon the coverage should be cognizable in the declaratory action. Should the Court first go into this issue bringing all parties to a trial first upon the question of whether or not McRae at the time was acting within the scope of his employment? Should the jury answer "No", of course Patton's, Inc., and the plaintiff would be eliminated in so far as any liability existed on the part of Patton's, Inc., but, should the jury answer "Yes", then every one must come back into court for another trial which would then be a straight tort action in which the plaintiff would really have no place, for the fact of insurance would be before the jury with no liability on the part of the plaintiff to the injured defendant unless Patton's, Inc., became insolvent and only then after judgment recovered.

The other alternative would be to go into the lengthy trial of all issues between all parties, submitting the coverage question with those of negligence, joint negligence, several negligence, permissive use by McRae, agency, extent of injury of each injured defendant, property damage, etc.— a trial in a regular tort action, which certainly is not within the purview of the Act, resulting in a multiplicity of issues calculated to confuse the jury and a method of trial manifestly unfair to the individual injured defendants. Each has a right under the State and Federal law to pursue his or her action separately against such parties as are proper to a final conclusion without the injection of extraneous issues.

With the many issues involved it appears that a more orderly disposition can be obtained by permitting the actions against the joint tortfeasors to proceed to judgment and then let the plaintiff meet whatever action might arise, where the only issue would be that of coverage.

As stated in American Auto. Ins. Co. v. Freundt, 7 Cir., 103 F.2d 613, 619, we conclude "that under the Declaratory Judgment Act the granting of relief rests in the sound discretion of the District Court. And under the facts of this case we are of the opinion that the District Court exercised sound judicial discretion in sustaining the motion to dismiss."

The motion to dismiss is sustained and action for declaratory judgment dismissed in its entirety.