**NEW YORK & PORTO RICO S. S. CO. et al. v. UNITED STATES et al.**

**Civ. No. 755.**

District Court, E. D. New York.

April 15, 1940.

Burlingham, Veeder, Clark & Hupper, of New York City (Roscoe H. Hupper and Burton H. White, both of New York City, of counsel), for plaintiffs.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y., appearing specially for purposes of motion (William E. Collins, of New York City, Sp. Asst. to U. S. Atty., and Dist. Counsel, United States Maritime Commission, and Ralph H. Hallett, Asst. Counsel, United States Maritime Commission, of Washington, D. C., of counsel), for defendants.

BYERS, District Judge.

Motion to dismiss petition and complaint for declaratory judgment (filed in this court on December 19, 1939) for the asserted reason that the court is without jurisdiction of the subject-matter of the action, as appears from the plaintiffs' pleading. The latter alleges:

That The New York and Porto Rico Steamship Company is a corporation of this state and a common carrier between the port of New York and ports in Puerto Rico and elsewhere, and until early in September, 1939, it operated a common carrier service from New Orleans to Puerto Rico; that the other plaintiff, Waterman Steamship Corporation, is an Alabama corporation, and also a common carrier between ports in the Gulf of Mexico and ports in Puerto Rico and elsewhere, with its principal office in Mobile, Ala.

That the United States Maritime Commission is a governmental body or agency of its co-defendant, the United States of America, "established by law for the purpose of performing certain duties entrusted to it by virtue of the Shipping Act, 1916 [46 U.S.C.A. § 801 et seq.], and the several Merchant Marine Acts".

That this suit arises under the laws of the United States and involves an actual controversy between the several parties "concerning a right and power claimed by the defendants but denied by the plaintiffs under Section 15 of the Shipping Act, 1916 [46 U.S.C.A. § 814], in respect of an agreement dated September 1, 1939, entered into between the two plaintiffs for the sale and purchase of the good will of the common carrier freight service which had been operated from New Orleans to Puerto Rico

by plaintiff The New York and Porto Rico Steamship Company, which service it had decided to terminate." A copy of that agreement was furnished to the Maritime Commission and is annexed to the petition.

That on November 21, 1939, the Maritime Commission made an order (Exhibit B, Docket 556) allegedly under Section 15 of the Shipping Act of 1916, which order purported to embrace the agreement "within the provisions of said Shipping Act as requiring approval by said Commission under said Section 15 * * *, and purporting to exercise jurisdiction in respect of the same * * *".

That a hearing was set pursuant to the said order, for December 20, 1939, although the plaintiffs without avail had objected thereto on jurisdictional grounds.

That the agreement in question does not provide for common carrier cooperative activities, as appears from the terms thereof, but pertains only to a sale of good will at an agreed price, and that it does not fall within Section 15 of the Shipping Act, 1916, in either terms or intent; that "no matter of administrative action or of discretion or of quasi-judicial determination is conferred on said Commission by law" respecting the said agreement or the rights of the parties to enter into it.

That the Maritime Commission is proceeding to exercise an alleged jurisdiction in respect of said agreement, in violation of the plaintiffs' rights under the Constitution and laws of the United States, in that the Commission may "seek to impose conditions, restrictions or adjudications on the plaintiffs" without warrant of law.

That in the attempted exercise of jurisdiction the Commission has entered the order referred to, in which it is recited that the said agreement "is one restricting freedom of competition between carriers and, therefore, subject to the jurisdiction of the Commission under Section 15, and that failure of parties to submit the same for approval has resulted in a violation of the Shipping Act, 1916, as amended".

That in another proceeding, entitled Docket 553, the Commission has entered an order (Exhibit C) purporting "to suspend tariff publication of the fact" of the suspension of the New York and Porto Rico Steamship Company's service from the Gulf to Puerto Rico, "which fact said plaintiff was bound to publish in order to comply with the Intercoastal Shipping Act, 1933 [46 U.S.C.A. §§ 843–848]". That

540

such order purports to be dealing with regulations and practices affecting rates and charges—contrary to the fact.

That the first-named plaintiff has requested the Commission to rescind the order, but the request was not granted, and a hearing in respect thereof had also been noticed for December 20, 1939.

For the purpose of the motion to dismiss, the allegations in the petition must be taken to be true, and the only question for decision is whether the petition presents a state of facts under which a declaratory judgment would be appropriate.

The argument for the defendants involves these two propositions:

First: That there is no actual controversy and therefore no occasion for the plaintiffs to seek a declaratory judgment.

Second: That, if the basis for the relief sought should be deemed present, still the plaintiffs may not proceed, since they could not have an injunction, under settled principles; a declaratory judgment is merely a procedural expedient and the plaintiffs may not now seek a declaration of their asserted rights, because if they should prevail, they might ultimately apply for "further relief" under paragraph (2) of the Act, Title 28 U.S.C. § 400 (2), 28 U.S.C.A. § 400 (2).

It will be convenient to examine the second contention at once:

That an injunction may not be awarded to a party cited to appear before the National Labor Relations Board, upon the ground that requisite jurisdiction is lacking (i.e., interstate commerce not involved), was clearly decided in Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638, (See cases cited in footnote at page 51 of 303 U.S., 58 S.Ct. at page 464, 82 L.Ed. 638).

As with the National Labor Relations Board, so with the Maritime Commission, an order is not self-executing, but requires the sanction of a court of law to become effectual (Title 46 U.S.C. § 830, 46 U.S.C.A. § 830).

That resemblance in the reach of administrative authority of these respective agencies of government is thought not to arrest further inquiry in this case, in view of the close attention directed to the provisions of the statute creating the National Labor Relations Board, revealed in the opinion of the Supreme Court in the Myers case, supra, which led to the reversal of the decisions of the courts below.

For reasons which will appear, it is thought that the extent to which the courts may entertain a cause which presents an issue of law, at the instance of an affected suitor, without first requiring that he submit his contentions to an administrative tribunal whose jurisdiction he denies—in apparent good faith, and on substantial grounds—must be determined in deference to controlling interpretation of the statute from which the administrative agency concerned derives its authority.

The Shipping Act (Title 46 U.S.C. § 830, 46 U.S.C.A. § 830) provides in terms that the venue and procedure in federal courts in suits to enforce, suspend or set aside in whole or in part "any order of the board shall, except as otherwise provided, be the same as in similar suits in regard to orders of the Interstate Commerce Commission * * *".

That a question of law under the Interstate Commerce Act (49 U.S.C.A. § 1 et seq.) is appropriate for initial determination by the courts, has been decided:

Great Northern Railway Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943: This was a suit by a shipper to recover overcharges by a railroad carrier. It was argued before the Supreme Court that the trial court was without jurisdiction until the Interstate Commerce Commission had determined upon the true construction of the tariff involved.

The court held that there were no facts in controversy and no occasion for the exercise of administrative discretion; that a matter of construction alone was presented, and that preliminary resort to the Commission was unnecessary.

That decision was cited as expository of the rule applicable to the Shipping Board (the predecessor of the Maritime Commission) in United States Navigation Co., Inc. v. Cunard Steamship Co., Ltd., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408.

The petition in this case alleges that the contract (Schedule A) as appears from its terms, represents only a sale of good will and does not come within Section 15 of the Shipping Act of 1916. "* * * and no matter of administrative action or of discretion or of quasi-judicial determination is conferred on said Commission by

law in any respect * * *" concerning the contract or the rights of the parties.

For present purposes, that allegation must be taken as true, which means that only questions of construction, and not of fact, or administrative discretion in technical matters, are presented in this cause.

Since it has not been suggested that the Great Northern case, supra, is no longer the law, it results that the plaintiffs were not precluded from filing this petition by the decision of Myers v. Bethlehem, supra, but, if their cause is to be dismissed, the reason must be found in the Shipping Act.

To demonstrate the soundness of their procedure, the plaintiffs cite:

Quinones et al. v. Landron, 1 Cir., 99 F. 2d 618: In this proceeding, two associate commissioners of the Public Service Commission of Puerto Rico sought a declaratory judgment against the president of that body and a law clerk, respecting the residence of the power of appointment of the latter. *Held* that the proceeding was properly laid, and that a definite dispute was present which called for judicial determination, i.e., there was a justiciable question.

The case scarcely meets the issue here raised.

Black et al. v. Little, D. C., 8 F.Supp. 867: A motion to dismiss a bill filed for injunction, but later urged for consideration as a petition for a declaratory judgment, was retained as to the latter, but granted as to the former. The question presented was whether the plaintiffs were subject to the administrative disciplines of the defendant as Market Administrator under the Agricultural Adjustment Act (7 U.S.C. § 608 (3), 7 U.S.C.A. § 608 (3), in view of their assertions that their activities were solely intrastate. In reliance upon Nashville, Chattanooga & St. Louis Ry. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191, Judge Tuttle held that an appropriate basis for a declaratory judgment was present.

This case is valuable as pointing out that, although injunctive relief is not justified, a declaratory judgment would be appropriate; it does not involve a possible conflict with a hearing already ordered by an administrative agency.

Gully v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145, certiorari denied, 298 U.S. 688, 56 S.Ct. 958, 80 L.Ed. 1407: As this case reached the Fifth Circuit Court of Appeals, it presented a bill for declaratory judgment respecting a tax assessment threatened by taxing authorities of Mississippi, against the plaintiff and its property. A decree had been awarded to the plaintiff in the District Court, and an injunction to render it operative.

In affirming, the court wrote, 82 F.2d at page 149: "When, then, an actual controversy exists, of which, if coercive relief could be granted in it the federal courts would have jurisdiction, they may take jurisdiction under this statute [Title 28 U. S.C. § 400], of the controversy to grant the relief of declaration, either before or after the stage of relief by coercion has been reached", citing text and cases.

It was also held that the plaintiff need not first exhaust its remedies to review the assessment.

The foregoing is plainly applicable to the argument that these plaintiffs must be dismissed because it is premature for them to seek a declaration of rights until the Maritime Commission shall have made an order against them, even though it is conceivable that they might be able to procure an injunction against that order, under the previously cited section of the Shipping Act.

The defendants rely mainly upon:

Bradley Lumber Co. v. National Labor Relations Board, 5 Cir., 84 F.2d 97: This decision denied injunctive relief, it appearing that the District Court lacked jurisdiction. The comment in the opinion concerning a declaratory judgment expressly cites the Gully case, supra, decided by the same court.

Newport News Co. v. Schauffler, 303 U. S. 54, 58 S.Ct. 466, 82 L.Ed. 646: This is similar in all pertinent respects to the Myers case, supra.

Since it is not made to appear that the Shipping Act has been construed to forbid the plaintiffs to present their cause in the guise adopted, the inquiry must now turn to the question of whether an existing controversy is revealed in the petition.

As to this little need be written. The orders quoted speak for themselves:

The third and fourth paragraphs of Schedule B recite that the contract (Schedule A) is substantially similar to an earlier one that was withdrawn by the parties, which operated "to control, regulate, prevent or destroy competition" and that Schedule A is subject to the jurisdiction of the Commission under Section 15 of the

Shipping Act of 1916, although the parties had asserted the contrary.

■ Whether those things are true is manifestly a matter of construction (Great Northern Ry Co. v. Merchants' Elevator Co., supra) and for the Commission to have made an order which recites the controversy, and then to contend that none is present, is to suggest that a self-imposed dilemma must be disregarded, because it is self-imposed.

Schedule C is an order suspending tariff publication by reason of the contract (Schedule A) as to which the petition alleges: "which fact said plaintiff was bound to publish in order to comply with the Intercoastal Shipping Act, 1933". The motion to dismiss of course is predicated upon the truth of that allegation. This means that the Commission's order (Schedule C) requires the plaintiff to violate the statute referred to. To urge that a controversy has not been thereby created is to assert the incongruous.

The defendants rely upon the following cases to demonstrate non-existence of a controversy:

Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688: The court found no actual controversy in a stockholders' suit to enjoin a contract by their corporation with Tennessee Valley authority. At bar, it is clear that an actual controversy is present, and the Maritime Commission has so recited in its order.

John P. Agnew & Co., Inc. v. Hoage, 69 App.D.C. 116, 99 F.2d 349: Here it was concluded that an "opinion" by a Deputy Commissioner of a Compensation Commission, in the absence of a showing that he "has taken, or that he intends to take, action harmful to the appellants", fails to reveal an actual controversy to support the bill for a declaratory judgment. In other words, that the petitioners were premature in their procedure.

If these plaintiffs are in similar case, the language of the orders (Schedules B and C) has been misunderstood by this court.

American Automobile Ins. Co. v. Freundt, 7 Cir., 103 F.2d 613: This case turns upon the priority of a state court action or proceeding in personam, over a later federal litigation presenting the same issues. It is not in point.

Bradley Lumber Co. v. National Labor Relations Board, 5 Cir., 84 F.2d 97: This case has already been referred to.

United States v. West Virginia et al., 295 U.S. 463, 55 S.Ct. 789, 79 L.Ed. 1546: Here the court refused to exercise its original jurisdiction, and dismissed a bill filed by the United States against West Virginia and three private corporations, for failure to present invasion of property right in the federal government. The court points out that difference of opinion between officials of two governments does not present interference with the authority of the United States. So much may be freely conceded for present purposes, without affecting the issues under consideration.

The presence of a real controversy between these plaintiffs and the Maritime Commission concerning the construction to be placed upon the contract, and the effect to be given to it, is thought to have been established by the allegations of the bill.

It results therefore that the plaintiffs may not be summarily dismissed as having failed to plead themselves within the purview of the declaratory judgment statute; or to show that a declaration of their rights as asserted would be in derogation of the statutory functions of the Maritime Commission.

Considerations of expediency suggest the wisdom of permitting the plaintiffs to present their evidence; the dispatch of the public business, and the rights and duties of the plaintiffs and the Commission may all be conveniently weighed in a proceeding which will result in an appropriate declaration touching the matters in controversy.

If it be established that Exhibit A of the bill is indeed but an oblique and furtive approach to precincts closed to the parties under their earlier and abandoned bargain —as the Commission's order recites—it is to be anticipated that this court can deal adequately with the proven requirements of the cause.

In any case, the merits can be promptly adjudicated, and judicial inquiry will not have to wait upon arguments and contentions respecting administrative jurisdiction.

It is concluded therefore that the motion to dismiss must be denied.

Settle order.